UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHRISTOPHER MILLER,<br><br>        Plaintiff,<br><br>   v.<br><br>MARGARET GILBERT, et al.,<br><br>        Defendants. | CASE NO. C16-5891 BHS<br><br>ORDER ADOPTING IN PART AND DECLINING IN PART REPORT AND RECOMMENDATION |

This matter comes before the Court on the Report and Recommendation ("R&R") of the Honorable J. Richard Creatura, United States Magistrate Judge (Dkt. 103), Defendant Shelli Hudson's ("Hudson") objections to the R&R (Dkt. 105), Plaintiff Christopher Miller's ("Miller) objections to the R&R (Dkt. 109),[1] and Miller's motion to strike Hudson's objections to the R&R and her response to Miller's own objections (Dkt. 115).

---

[1] Also pending before the Court is Plaintiff's motion seeking to compel the production of a copy of the R&R and requesting an extension of his deadline to object. Dkt. 107. While it appears that it took several days longer than would be expected for Plaintiff to receive a copy of the R&R, it is clear from Plaintiff's pleadings that he received a copy with adequate time to prepare his objections, which were timely filed. Because Plaintiff received the R&R and timely filed his objections, the motion to extend deadlines and to compel production (Dkt. 107) is **DENIED as moot**.

ORDER - 1

The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3).

**A.     Miller's Objections**

Miller's main objection focuses on the recommendation that Defendant Margaret Gilbert ("Gilbert") be dismissed. Specifically, Miller argues that Gilbert's participation in reviewing his level II grievance constitutes sufficient personal participation to support a finding of liability for an allegedly unconstitutional denial of medical care. However, the Court agrees with the R&R that Gilbert's review provided an adequate response to the allegations in Miller's grievance. Gilbert assigned an investigator to Miller's claims and the resulting investigation indicated that (1) Miller had been seen by medical staff at the time the restraints were removed, (2) Miller had since cancelled an appointment for medical care, (3) and no medical kites could be located wherein Miller sought treatment for injuries to his wrist and thumb. Dkt. 85 at 2; *see also* Dkt. 102 at 97. Additionally, Miller had been seen twice by medical staff before the review of his level I grievance was completed. Dkt. 85 at 2.

Miller did not allege in his grievance on August 25 that he had submitted multiple prior medical kites requesting treatment for his hand. In fact, under the facts and theory described in Miller's own declaration, those alleged kites were never properly filed or submitted for the very purpose of avoiding review by a subsequent investigation or

supervisor like Gilbert. *See* Dkt. 102 at 21 ("I believe Hudson threw away or destroyed them, so a doctor or provider wouldn't see my injuries during an exam, and get Hudson in trouble for not reporting my injuries originally."). Nor is there any evidence suggesting Gilbert was somehow placed on notice that Hudson or any other member of the medical staff had allegedly failed to process grievances properly or take any other action to prevent supervisors from discovering the extent of Miller's injury.

Based on the record, Gilbert reasonably believed that Miller was receiving adequate medical treatment and that any further necessary medical attention was readily available. There is no evidence whereby a rational juror could conclude that Gilbert was deliberately indifferent to Miller's medical needs by delaying treatment.

Also, Miller objects to the recommended dismissal of his state law claims against the defendants who have been granted summary judgment on his federal claims. He notes that this case was removed from state court and argues that his state law claims should be remanded rather than dismissed if the Court declines to exercise supplemental jurisdiction. The Court agrees that judicial efficiency would favor an order of remand over dismissal of Miller's state law claims. However, all of Plaintiff's remaining state law claims are closely intertwined with his remaining federal claim against Hudson, as they all revolve around the use of bolt cutters to remove his hand cuffs and his resulting injuries. Remanding or dismissing the case partially while proceeding with the claim against Hudson could lead to inconsistent results and findings. Accordingly, the Court finds that in the interests of judicial efficiency, the Court should continue to exercise its supplemental jurisdiction over Miller's state law claims and should address those claims

on the merits. Accordingly, the Court will return this matter to Judge Creatura for consideration of the summary judgment motions already submitted in regards to Miller's state law claims.

B.      **Hudson's Objections**

Hudson objects to the R&R's conclusion that the record presents genuine disputes of material fact over whether she was deliberately indifferent to Miller's medical needs. Hudson's primary argument is that "Plaintiff presented no admissible evidence to support a claim of deliberate indifference to a serious medical need by . . . Hudson." Dkt. 105 at 4. Specifically, Hudson argues that (1) the only objective findings during her examination were a small cut and slight swelling that were properly treated with ice, (2) nothing in the record supports a claim that Hudson ignored Miller's requests for medical treatment, (3) no medical provider has diagnosed an avulsion fracture, (4) Plaintiff was placed in medical segregation from August 19 through August 24, (5) medical records show that he received care from M.L. Furst, M.D. on August 19, 21, and September 4, but there is not any mention of physical injuries from the incident, and (6) Miller was seen by medical professionals on twelve occasions between August 18, 2015 and October 12, 2015.

However, Plaintiff has submitted evidence in the form of his declaration that he gave Hudson numerous medical kites seeking medical attention for his hand that were never properly filed. Dkt. 102 at 6. While this is scant evidence to support his claim, his statements are feasible when considered with other evidence in the record. For instance, it is at least somewhat suspicious or incongruent that Miller filed a grievance seeking medical attention and complaining that he received inadequate care for his hand as soon

as he was moved out of medical segregation, and yet the records from when Miller was in medical segregation lack any indication that Miller was complaining about his hand. *See* Dkt. 102 at 89–90. While Hudson asserts that the only time she dealt with Miller was when he was initially brought to the outpatient infirmary and the handcuffs were removed, she acknowledges that she may have dealt with him in segregation when "possibly dispensing medication that had been ordered by medical providers. Dkt. 86 at 3. This is not necessarily inconsistent with Miller's statements that he gave medical kites to Hudson when she came to administer his medications. Dkt. 102 at 21.

Also, it should be noted that while Miller was placed in medical segregation and received some treatment, the record plainly indicates that this was done in light of mental health and safety concerns and not to treat his hand. Dr. Furst—a psychiatrist—did not note any concerns pertaining to Miller's hand on the record when providing mental health treatment, but this does not establish that Miller's hand was not in fact injured. Furthermore, it is not inconsistent with Miller's testimony that when he mentioned his hand to Dr. Furst, Dr. Furst explained that his focus dealt exclusively with mental health and that Miller would need to talk with his regular provider for physical treatment. Dkt. 102 at 20.

Finally, the Court notes that there is at least some evidence that Miller's hand injury was sufficiently severe and painful that a deliberate delay of medical attention and relief would constitute an unnecessary and wanton infliction of pain. Plaintiff's injury was sufficient enough that he received an immobilizing splint months after his hand was injured. Although the x-ray he eventually received 3 months after the injury does not

confirm that his hand was broken by the removal of his handcuffs with bolt cutters, they do not rule out that possibility. *See* Dkt. 84 at 27 ("There is an old healed fracture at fifth metacarpal base," the location of Miller's injury). Additionally, defendants have failed to point to any evidence contradicting Miller's description that his hand was severely swollen and remained so for days after the incident. Moreover, it plainly shown from the medical records that Miller does indeed suffer from painful conditions in his hand. Whether or not Miller lacks sufficient evidence to establish that his hand was broken or that his diagnosed hand injuries were actually caused by the cutting of his handcuffs, he has submitted sufficient evidence for a rational juror to believe that he suffered from sufficiently severe and apparent pain that an intentional delay of treatment, such as throwing away medical kites and ignoring medical requests, would constitute deliberate indifference to Millers medical and an unnecessary and wanton infliction of pain.

     As a final note, the Court recognizes the inherent difficulty in this case. The defendants point to an absence of medical records suggesting a severe hand injury in order support their defense that they were not deliberately indifferent to complaints of pain from a serious injury, yet Miller's claims are predicated on a theory that medical staff was deliberately indifferent to his medical needs by refusing to process the very medical kites that would have created a record of his painful injury. Ultimately, the Court finds that this case comes down to a credibility determination that creates just sufficient a genuine dispute of material fact as to require submission to a jury.

     The Court having considered the R&R, Plaintiff's objections, and the remaining record, does hereby find and order as follows:

The R&R is **ADOPTED in part** as follows: (1) Gilbert's motion for summary judgment on Miller's § 1983 claim against her is **GRANTED**; and (2) Hudson's motion for summary judgment on Miller's § 1983 claim against her is **DENIED**. The Court **DECLINES** to adopt the R&R in part and the case is **RETURNED** to Judge Creatura for further proceedings on Defendants' motion for summary judgment in regards to Miller's state law claims.

Dated this 31st day of May, 2018.

_____
BENJAMIN H. SETTLE
United States District Judge