1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9
10

CHRISTOPHER MILLER,

11

Plaintiff,

12

v.

13

MARGARET GILBERT, et al.,

14

Defendants.

CASE NO. 3:16-cv-05891-BHS-JRC

REPORT AND RECOMMENDATION

NOTED FOR: August 10, 2018

15
16        This 42 U.S.C. § 1983 civil rights matter has been referred to Magistrate Judge J. Richard

17    Creatura pursuant to 28 U.S.C. §§ 636 (b)(1)(A) and (B) and Local Magistrate Judge Rules MJR

18    1, MJR 3, and MJR 4.

19        Plaintiff Christopher Miller alleges that defendants committed several state tort violations

20    when they bound him in handcuffs and, when the handcuffs jammed, removed the handcuffs

21    with bolt cutters. He claims that defendants acted with negligence in applying and removing the

22    handcuffs, that they committed battery when they applied and removed the handcuffs, and that

23    several defendants committed medical malpractice when they treated him after the handcuffs

24    were removed. Insofar as plaintiff alleges defendant Hudson ignored plaintiff's complaints and

1    deprived him of treatment following the incident, plaintiff has adequately alleged defendant

2    Hudson acted negligently and, because the complete lack of care would be apparent to a

3    layperson and does not require an expert medical opinion, he has adequately alleged medical

4    malpractice. There is also a dispute of material fact as to whether defendants Ellis and Wilbur

5    ignored plaintiff's statements that he was in pain as defendant Ellis removed the handcuffs with a

6    bolt cutter, thus precluding summary judgment as to that claim. However, plaintiff has not

7    provided evidence that any other defendants breached their duties of care when applying or

8    removing the handcuffs, that any defendant acted with excessive force when applying or

9    removing the handcuffs so as to constitute battery by a corrections officer, or that any care he

10   received (except that from defendant Hudson) fell below his healthcare providers' standard of

11   care. Therefore, the Court recommends that defendants' motion for summary judgment be denied

12   as to the negligence claims against defendants Hudson, Ellis, and Wilbur and as to the medical

13   malpractice claim against defendant Hudson. It should be granted as to all other state tort claims.

### BACKGROUND and PROCEDURAL HISTORY

15        Plaintiff, proceeding *pro se*, originally filed this action with the Grays Harbor County

16   Superior Court. Dkt. 1. It was removed to this court in October of 2016. *Id*. After plaintiff filed

17   an amended complaint (Dkt. 14) and a second amended complaint (Dkt. 36), defendants moved

18   for summary judgment (Dkt. 38). The Court recommended granting defendants' motion as to all

19   but one defendant. Dkt. 73. The Honorable Benjamin H. Settle adopted the report and

20   recommendation as to all but defendants Hudson and Gilbert. *Id*. He remanded to this Court for

21   further proceedings. *Id*. Defendants subsequently filed a motion for summary judgment as to

22   plaintiff's state law claims. Dkt. 90.

23

24

1    After ordering and receiving supplemental briefing (Dkt. 79), this Court filed another

2    report and recommendation, recommending that defendants' motion for summary judgment be

3    granted as to defendant Gilbert, but denied as to defendant Hudson. Dkt. 103. Judge Settle

4    adopted the report and recommendation in part, and rereferred the case to this Court with

5    instructions to make a determination on plaintiff's state law claims. Dkt. 120.

6    In plaintiff's second amended complaint, he raises several state tort claims. Dkt. 36. He

7    first alleges that defendants were negligent when they placed his wrists in handcuffs and the

8    handcuffs subsequently jammed, and that their use of bolt cutters to remove the jammed

9    handcuffs was also negligent. *Id*. He next claims that defendants committed battery based on the

10   same conduct. *Id*. He finally claims that his medical providers committed medical malpractice

11   when they misdiagnosed a wrist fracture allegedly caused by the removal of the faulty handcuffs,

12   and failed to provide him with further medical treatment after the incident. *Id*.

13                              **STANDARD OF REVIEW**

14   The standard of review is the same as enunciated in the Court's previous report and

15   recommendation. Dkt. 73, pp. 3-5.

16                                  **DISCUSSION**

17   **I.    Defendants Initial Motion for Summary Judgment (Dkt. 38)**

18   The District Court issued an order returning this case to this Court "for further

19   proceedings on defendants' motion for summary judgment in regards to Miller's state law

20   claims." Dkt. 120, p. 7. Pursuant to that order, the Clerk reopened defendants' initial motion for

21   summary judgment (Dkt. 38) and rereferred that motion to this Court. The District Court initially

22   granted defendants' motion as to all defendants except Hudson and Gilbert, before rereferring it

23   to this Court for further proceedings. Dkt. 77. On a report and recommendation from this Court,

24

1    the District Court subsequently granted summary judgment (Dkt. 38) as to defendant Gilbert and

2    denied summary judgment as to defendant Hudson (Dkt. 120). Defendants did not address any of

3    plaintiff's state law claims in that motion for summary judgment. Dkt. 38. Therefore, insofar as

4    the District Court has instructed this Court to analyze defendants' state law defenses in

5    defendants' initial motion for summary judgment (Dkt. 38), defendants' initial motion for

6    summary judgment should be denied as moot because it does not contain any state law claims.

7    **II.    Defendants Motion for Summary Judgment of State Claims (Dkt. 90) and
          Plaintiff's Cross-Motion for Summary Judgment (Dkt. 98)**

8    *A. Negligence Claims*

9    Under Washington law, to recover under negligence, plaintiff must demonstrate four

10   things: (1) the existence of a duty to plaintiff; (2) a breach of that duty; (3) a resulting injury; and

11   (4) the breach was the proximate cause of the injury. *Wuthrich v. King County*, 185 Wash. 2d 19,

12   25 (2016); *Lowman v. Wilbur*, 178 Wash. 2d 165, 169 (2013); *Crowe v. Gaston*, 134 Wash. 2d

13   509, 514 (1998). The threshold determination is whether a duty is owed to the plaintiff. *Taylor v.*

14   *Stevens C'nty*, 111 Wash. 2d 159, 163 (1988). If a duty is owed, the Court must then ascertain

15   the nature of the duty by establishing the "standard of care." *Keller v. City of Spokane¸*146 Wash.

16   2d 237, 243 (2002).

17   "Washington courts have long recognized a jailer's special relationship with inmates,

18   particularly the duty to ensure health, welfare, and safety." *Gregoire v. City of Oak Harbor*, 170

19   Wash. 2d 628, 625 (2010). A jail, and by extension its staff, also have a duty "to protect an

20   inmate from injury by third parties and jail employees." *Id.* at 645 (Madsen, C.J.,

21   concurring/dissenting). Though *Gregoire v. City of Oak Harbor* discussed a prisoner in a county

22   jail, the Washington Court of Appeals has noted that "[i]t is undisputed the Department [of

23   Corrections] owes a duty to ensure the health, welfare, and safety of incarcerated individuals."

*Hopovac v. State Department of Corrections*, 197 Wash. App. 817, 823 (Div. III 2017) (citing *Gregoire*, 170 Wash. 2d 43). It thus follows that staff of the Department of Corrections also owe a duty to ensure the health, welfare, and safety of prisoners in their custody.

    1.  <u>Claims Against Defendant Hudson</u>

        The Court has already concluded that there is a dispute of material fact as to whether defendant Hudson violated plaintiff's federal constitutional rights by providing deliberately indifferent medical care. Dkts. 103, 120. The District Court has found that plaintiff has produced evidence that he gave defendant Hudson medical kites explaining the extent of his injuries and requesting additional care, but defendant Hudson refused to process them and denied plaintiff any additional care. Dkt. 120, pp. 4-5. Plaintiff has further provided evidence in the form of his declaration that this caused delay in his treatment for his injured wrist, causing increased pain and further injury. *See* Dkt. 102, p. 21. Defendant Hudson has provided evidence contradicting plaintiff's evidence. *See* Dkt. 86.

        By showing there is a dispute of material fact as to whether defendant Hudson provided deliberately indifferent medical care, plaintiff has also shown that there is a dispute of material fact as to whether defendant Hudson provided negligent medical care. Plaintiff has produced disputed evidence that defendant Hudson owed a duty to provide him with adequate medical care, that she breached that duty by failing to provide him with medical care, and that this breach caused additional injury. Thus, because plaintiff has shown there is a dispute of material fact as to plaintiff's negligence claim against defendant Hudson, summary judgment is inappropriate and the negligence claim against defendant Hudson should proceed on the merits.

1      2.  Application of Handcuffs

2          The District Court has already noted that "[t]he improper application of the handcuffs

3  was at most a negligent attempt to restore discipline and order after an inmate altercation." Dkt.

4  77, p. 2. However, this is not a finding that defendants' conduct was negligent, but rather a

5  finding that plaintiff could, with appropriate evidence, prove that defendants' conduct was

6  negligent. Indeed, in certain circumstances, the improper application of handcuffs by an officer

7  can rise to the level of negligence. *See*, *e.g.*, *Okpara v. District of Columbia*, 174 F. Supp. 3d 6,

8  11-15 (D. D.C. March 24, 2016) (finding evidence that the application of handcuffs by an officer

9  that fell outside the national standard of care for the application of handcuffs was enough for a

10  negligence claim to survive summary judgment).

11          Here, it is undisputed that defendant Miller applied handcuffs to plaintiff after breaking

12  up a fight between plaintiff and another prisoner. *See* Dkt. 40; Dkt. 62-1, p. 25. It is also

13  undisputed that plaintiff complained that the handcuffs were too tight. *Id*. Plaintiff alleges that,

14  when he complained, defendant Miller told him to "hold still" and continued applying the

15  handcuffs. Dkt. 62-1, p. 25. However, it is undisputed that, after defendant Miller applied the

16  handcuffs and plaintiff complained the handcuffs were too tight, defendant Miller tried to loosen

17  them. Dkt. 40; Dkt. 62-1, p. 25. It was only then that defendant Miller realized the handcuffs had

18  malfunctioned and the key would not unlock or loosen them.

19          Reading the evidence in the light most favorable to plaintiff, plaintiff was restrained

20  following an altercation, defendant Miller applied handcuffs that were too tight for plaintiff, and

21  defendant Miller attempted to adjust the handcuffs when plaintiff complained of how tight they

22  were. Rather than negligence, the undisputed facts indicate that defendant Miller was attempting

23  to adhere to her duty to ensure plaintiff's health, welfare, and safety when she realized the

24

1  handcuffs were too tight. *Gregoire*, 170 Wash. 2d at 625. Plaintiff has not shown defendant

2  Miller breached her duty to plaintiff.

3      Plaintiff also alleges that defendant Miller was the proximate cause of his injury because

4  she allegedly failed to properly inspect her handcuffs, leading to the jammed locking mechanism

5  that ultimately caused his injury when they were removed with bolt cutters. However, plaintiff

6  has provided no evidence that defendant Miller failed to inspect the restraints, and defendant

7  Miller has provided a declaration stating that she did indeed inspect the handcuffs and there was

8  no indication that they were faulty. Dkt. 40. "When opposing parties tell two different stories,

9  one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a

10  court should not adopt that version of the facts for purposes of ruling on a motion for summary

11  judgment." *Scott v. Harris*, 550 U.S. 371, 380 (2007). Because plaintiff's bare allegation that

12  defendant Miller failed to inspect the handcuffs is blatantly contradicted by evidence on the

13  record, the Court declines to adopt plaintiff's version of events.

14      Further, plaintiff has alleged that the actual injury to his wrist occurred when defendants

15  Ellis and Wilbur negligently attempted to remove the handcuffs. Generally, a negligent

16  intervening act will break the chain of causation only if the intervening acts was not reasonably

17  foreseeable. *See Smith v. Acme Paving Co.*, 16 Wash. App. 389, 397 (Div. II 1976). Here, it

18  would be reasonably foreseeable that a pair of jammed handcuffs would be removed using bolt

19  cutters. However, plaintiff alleges defendant Ellis and Wilbur not only removed the handcuffs

20  with bolt cutters, but bent his wrist to the point of fracture, ignored his plea to stop because of the

21  pain, and applied the bolt cutters without any protection for plaintiff's wrist. The Court finds

22  such an egregious allegation is not a reasonably foreseeable consequence of applying handcuffs,

23  even if defendant Hudson knew they were faulty. Thus, the intervening acts of defendants Ellis

24

1    and Wilbur have broken the chain of causation leading from defendant Miller's alleged actions

2    and defendant Miller's actions were not the proximate cause of plaintiff's injury.

3        Plaintiff has failed to show how defendant Miller breached her duty to ensure the health

4    and welfare of plaintiff and, in fact, has provided allegations that amount to defendant Miller

5    affirmatively adhering to her duties. Further, even if she had breached her duty, plaintiff has

6    failed to demonstrate her actions were the proximate cause of plaintiff's alleged injury. Thus,

7    plaintiff has failed to show that defendant Miller is liable for negligence.

8        3.  Removal of Handcuffs

9        Plaintiff also argues that defendants Ellis and Wilbur negligently removed his handcuffs

10   with bolt cutters causing him injury. The District Court has noted that the use of the bolt cutters

11   "to remove the handcuffs was a reasonable attempt to help Miller and relieve the pain from the

12   over-tightened cuffs." Dkt. 77, p. 3. However, though the choice to use bolt cutters may not have

13   been negligent, defendant Ellis's and Wilbur's actual actions in removing the handcuffs may

14   have been.

15       Plaintiff alleges that defendants Ellis and Wilbur used bolt cutters to remove plaintiff's

16   handcuffs, and despite plaintiff's plea to stop because he was in pain, defendant Ellis continued

17   to twist and bend plaintiff's wrist, leading to a "pop" sound, followed by excruciating pain. Dkt.

18   62-1, p. 28. Plaintiff also argues the handcuffs were too tight to safely place the bolt cutter blade

19   between plaintiff's skin and the restraint, but defendants Ellis and Wilbur did so anyway, causing

20   additional harm. *Id*. Plaintiff states in his declaration that both defendants Ellis and Wilbur took

21   turns attempting to remove the handcuffs. Dkt. 102, p. 18. Defendant Ellis confirms that he

22   attempted to remove the handcuffs with bolt cutters after receiving permission from defendant

23   Mainio. Dkt. 44. Defendant Ellis also confirms that the handcuffs were too tight to safely place

24

REPORT AND RECOMMENDATION - 8

the bolt cutter blade between plaintiff's skin and the restraint, but states he therefore used a wooden tongue depressor to guard plaintiff's skin from direct contact with the bolt cutter blade. *Id*. He states that plaintiff never asked him to stop, that plaintiff did not complain of pain, and defendant Ellis does not mention an audible pop when removing the restraints. *Id*. Defendant Wilbur states he was present when the handcuffs were removed, but did not assist in removing the handcuffs. Dkt. 41, p. 2. He also states that plaintiff thanked prison staff for their assistance once the handcuffs were removed. *Id*. He also makes no mention of an audible pop when the handcuffs were removed.

Plaintiff has thus provided evidence that places material facts in dispute. Defendants Ellis and Wilbur had a duty to provide for plaintiff's health and welfare. If defendants Ellis or Wilbur heard plaintiff complain of pain, but nonetheless continued to apply the bolt cutters, causing injury, defendants Ellis and Wilbur may have breached their duty to provide plaintiff welfare and safety and thus negligently attempted to remove plaintiff's restraints. Plaintiff's declaration that he told both defendants to stop because the angle of the bolt cutters was causing him pain, evidence that defendants Ellis and Wilbur initially attempted to remove the handcuffs without placing anything between the bolt cutters and plaintiff's skin, and the "pop" and alleged fracture suffered by plaintiff could support this conclusion. However, if defendant Ellis reasonably applied safeguards to protect plaintiff from injury and the safeguards did in fact protect plaintiff, and if defendant Wilbur was actually not involved in the removal of the handcuffs, defendants Ellis and Wilbur may not have breached their duty of care to provide plaintiff welfare and safety. Defendant Ellis's declaration that plaintiff never complained of pain or discomfort, evidence that he protected plaintiff's skin by placing a tongue depressor between the bolt cutters and plaintiff's wrist, evidence that plaintiff did not suffer injury from the handcuff removal, and evidence that

1  defendant Wilbur did not assist with the handcuff removal would support this contrary

2  conclusion. Thus, the material facts as to whether defendant Ellis took reasonable safeguards to

3  protect plaintiff's wrist when removing the handcuffs, facts as to whether plaintiff told

4  defendants Ellis and Wilbur he was in pain, facts as to the extent of plaintiff's injury, and facts as

5  to defendant Wilbur's involvement are all in dispute.

6       Because there are material facts in dispute that could either prove or disprove plaintiff's

7  allegations against defendants Ellis and Wilbur, summary judgment is improper as to the use of

8  bolt cutters to remove plaintiff's handcuffs. Thus, Plaintiff's negligence claim as to the use of the

9  bolt cutters should proceed on the merits.

10      4.  Other Negligence Claims

11      Plaintiff also alleges that defendants Martinez and Wilbur negligently trained defendant

12  Miller in the use of handcuffs, that defendant Mainio negligently authorized the use of bolt

13  cutters, that defendant Martinez failed to protect plaintiff from excessive force, and that

14  defendants Gilbert and Van Ogle failed to adequately train prison staff as to proper application

15  and removal of handcuffs. Dkt. 36, pp. 12-14. However, as noted above, plaintiff has not

16  established that defendant Miller negligently applied the handcuffs. Thus, plaintiff has also failed

17  to establish that defendants Martinez and Wilbur failed to train defendant Miller such that she

18  negligently applied the handcuffs. Similarly, the District Court has already found that the use of

19  bolt cutters to remove the handcuffs was a reasonable decision. Dkt. 77, p. 3. Thus, plaintiff

20  cannot establish that defendant Mainio acted negligently in authorizing their use. Further, the

21  Court has already found that no defendant used excessive force against plaintiff (Dkt. 73, pp. 6-

22  7; Dkt. 77, p. 2), and so defendant Martinez could not have failed to protect plaintiff from such

23  force. Finally, plaintiff has provided no evidence as to defendant Gilbert's or defendant Van

24

1    Ogle's training or lack of training for staff, so plaintiff has failed to produce significant,

2    probative evidence sufficient to survive summary judgment. Because plaintiff has failed to

3    establish a dispute of material facts as to the above claims, plaintiff's miscellaneous outstanding

4    negligence claims should be dismissed.

5        5.    Conclusion

6        Plaintiff has provided disputes of material fact as to defendant Hudson's negligence in

7    failing to provide medical care and defendant Ellis's and Wilbur's negligence in removing

8    plaintiff's handcuffs. He has also provided a dispute of material fact as to defendant Hudson's

9    alleged medical malpractice in denying him medical care. He has not otherwise shown the

10   defendants acted with negligence. Therefore, the Court recommends denying plaintiff's cross-

11   motion for summary judgment (Dkt. 98) in total and denying defendants' motion for summary

12   judgment (Dkt. 90) in part. Plaintiff's negligence claims against defendants Hudson, Ellis, and

13   Wilbur, and plaintiff's medical malpractice claim as to defendant Hudson's alleged failure to

14   treat plaintiff should proceed on the merits. The Court recommends granting defendnats' motion

15   for summary judgment (Dkt. 90) as to all other state law negligence claims.

16       B.   *Battery Claims*

17       Under Washington law, "[a] 'battery' is an intentional and unpermitted contact with the

18   plaintiff's person." *Kumar v. Gate Gourmet Inc.*, 180 Wash. 2d 481, 504. A defendant may be

19   liable for battery if: "(a) 'he [or she] acts intending to cause a harmful or offensive contact with

20   the [plaintiff], or an imminent apprehension of such contact, and (b) a harmful or offensive

21   contact with the [plaintiff] directly or indirectly results." *Id*. (citing RESTATEMENT (SECOND) OF

22   TORTS § 13 (1965)). The "intent" aspect of battery does not require malice or ill will – it only

23   requires that a defendant knows "to a 'substantial certainty'" that his or her actions will result in

24

a harmful or offensive touching. *Id.* (quoting *Garrat v. Dailey*, 46 Wash. 2d 197, 200 (1955)).
Thus, "[a] person . . . commits a battery where [he or] she performs '[a]n act which, directly or
indirectly, is the legal cause of harmful contact with another's person' and that act is intentional,
is not consented to, and is otherwise unprivileged." *Id.* at 505 (quoting *Garrat*, 197 Wash. 2d at
200).

In the context of police officers, rather than corrections officers, the officer "is justified in
using sufficient force to subdue a prisoner, however he becomes a tortfeasor and is liable as such
for assault and battery if unnecessary violence or excessive force is used in accomplishing the
arrest." *Boyles v. City of Kennewick*, 62 Wash. App. 174, 177 (Div. III 1991) (emphasis omitted).
Several other states and the District of Columbia have held that a corrections officer can
similarly be held liable for battery by employing excessive force to subdue prisoners. *See Pena v.
Greffet*, 108 F. Supp. 3d 1030, 1048-49 (D. N.M. 2015) (finding battery can be raised against a
corrections officer under New Mexico law); *Maraj v. Massachusetts*, 836 F. Supp. 2d 17, 32 (D.
Mass. 2011) (finding assault and battery can be raised against a corrections officer under
Massachusetts law); *Anderson Bey v. District of Columbia*, 466 F. Supp. 2d 51, 68 (D. D.C.
2006) (finding assault and battery can be raised against a corrections officer under D.C. law).
Though Washington has not explicitly made a similar finding for corrections officers, it has
found that police officers can be found liable for assault and battery if they use excessive force.
*See Staats v. Brown*, 139 Wash.2d 757, 780 (2000); *see also Goldsmith v. Snohomish C'nty*, 558
F. Supp. 2d 1140, 1156 (W.D. Wash. 2008) ("Washington does not permit qualified immunity
from claims of assault and battery where police used excessive force."); *Thomas v. City of
Seattle*, 395 F. Supp. 2d 992, 1000 (W.D. Wash. 2005) (noting that, under Washington law,
"[s]tate qualified immunity for assault and battery is not available to an officer who uses

1    excessive force."). Excessive force is force beyond that which is "objectively reasonable." *Estate*

2    *of Lee v. City of Spokane*, 101 Wash. App. 158, 567 (Div. III 2000) (citing *Graham v. Connor*,

3    490 U.S. 186, 195-97 (1989)).

4        Here, the Court has already recommended, and the District Court has found, that

5    defendants did not act with excessive force when they placed plaintiff in handcuffs or when they

6    removed those handcuffs. Dkt. 73, pp. 6-7; Dkt. 77, p. 2. In Washington, an officer may legally

7    use the force necessary to subdue a prisoner, and only becomes liable for battery when that force

8    becomes "excessive." *Boyles*, 62 Wash. App. at 177; *see also Ramirez v. City of Reno*, 925 F.

9    Supp. 681, 691 (D. Nev. 1996) (interpreting *Boyles* to mean officers "are privileged to use the

10   amount of force which reasonably appears necessary, and are liable for battery to the extent they

11   use more force than is reasonably necessary"). Because the Court has already found that

12   defendants used a reasonable amount of force when they restrained plaintiff, they did not become

13   tortfeasors when they applied the handcuffs or when they removed the handcuffs. Plaintiff has

14   not provided any additional evidence to show that defendants engaged in excessive force and

15   therefore he has not shown defendants are liable for battery in this context. Therefore, the Court

16   recommends plaintiff's battery claims be dismissed.

17   *C. Medical Malpractice Claims*

18       A medical malpractice claim filed by a prisoner may be dismissed for lack of expert

19   medical testimony if state law requires such testimony to establish the standard of care for

20   medical malpractice. *See Thompson v. Frank Luna*, 441 F. App'x 528, 529 (9th Cir. 2011).

21   However, "[w]hen medical facts are 'observable by [a layperson's] senses and describable

22   without medical training,' a plaintiff can establish the standard of care for a health care provider

23   without expert testimony." *Miller v. Jacoby*, 145 Wash. 2d 65, 72 (2001) (quoting *Harris v.*

24

1  *Robert C. Groth, M.D., Inc.*, 99 Wash. 2d 328, 449 (1983) (finding that expert testimony is not

2  necessary when the alleged malpractice was leaving a foreign object in a patient's body after

3  surgery). Only when "the want of skill or lack of care is so apparent as to be within the

4  comprehension of laymen and requires only common knowledge" is a medical expert

5  unnecessary. *Hall v. Sacred Heart Medical Center*, 100 Wash. App. 53, 60 (Div. III 2000)

6  (quoting *Hart v. Steele*, 416 S.W.2d 927, 932 (Mo. 1967)).

7        Here, plaintiff first argues that defendant Hudson committed medical malpractice when

8  she misdiagnosed the alleged injuries to his wrist, and argues in his cross-motion for summary

9  judgment that he sustained an "avulsion fracture" that should have been cared for earlier. Dkt.

10  36, p. 13. Dkt. 98, pp. 12-13. However, plaintiff has provided only his own description and a

11  summary of a medical article describing avulsion fractures. Dkt. 98, p. 12; Dkt. 98-1, p. 7. He

12  has not provided expert testimony as to the causes of avulsion fractures, the symptoms of

13  avulsion fractures, the proper treatment of avulsion fractures, or the accepted standard of care for

14  treating avulsion fractures. In contrast, defendants have provided statements from two medical

15  experts stating that plaintiff did not sustain a fracture as a result of the August 18, 2015 incident.

16  Dkts. 67, 84. Because the avulsion fracture issue is complex and not within the realm of a normal

17  laypersons' knowledge, plaintiff must provide expert testimony to prove his claim. *See*

18  *Thompson*, 441 F. App'x at 529. However, he has not produced any here. Because plaintiff has

19  failed to provide any expert testimony establishing the standard of care and showing how

20  defendants failed to uphold their duty as to plaintiff's alleged avulsion fracture, plaintiff has not

21  properly stated a claim for medical malpractice as to his alleged avulsion fracture.

22        Second, read liberally, plaintiff alleges that defendant Hudson committed medical

23  malpractice when she refused to respond to his medical kites or pass them on to the appropriate

24

recipients, and failed to provide additional medical treatment. *See* Dkt. 36, p. 13. Defendants

argue that this claim cannot survive because plaintiff has not provided expert testimony to

establish an injury. However, the District Court has already found that plaintiff has provided

sufficient evidence to show that defendant Hudson may have been aware of plaintiff's continued

pain, and yet refused to treat him. This alleged lack of care is the type of "apparent lack of care"

that would allow a layperson with only common knowledge to understand that a breach of the

standard of care has occurred. *Jacoby*, 145 Wash. 2d at 72; *Hall*, 100 Wash. App. at 60. Because

the Court has already found that plaintiff has produced evidence sufficient to plead that

defendant Hudson failed to provide any treatment, plaintiff has properly stated a claim as to

defendant Hudson's alleged malpractice in failing to treat plaintiff. That claim should proceed on

the merits. Therefore, the Court recommends defendants' motion be granted as to plaintiff's

allegation that he suffered an untreated avulsion fracture, and denied as to his claim that

defendant Hudson committed medical malpractice when she refused to provide plaintiff medical

care.

## CONCLUSION

For the reasons set forth above, the Court recommends that plaintiff's cross-motion for

summary judgment (Dkt. 98) be denied and defendants' motion for summary judgment (Dkt. 90)

be granted in part. Plaintiff's state negligence claims against defendants Hudson, Ellis, and

Wilbur should continue on the merits. Plaintiff's medical malpractice claim against defendant

Hudson should also continue on the merits. All other state law claims should be dismissed.

Defendants' initial motion for summary judgment (Dkt. 38) should be denied as moot because

1    the federal claims have already been determined and the motion does not raise any state law

2    arguments.

3    　　　　Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

4    fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

5    6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo*

6    review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver

7    of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v.*

8    *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

9    imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **August 10,**

10   **2018** as noted in the caption.

11   　　　　Dated this 20th day of July, 2018.

12

13

14                                                          _____

15                                                          J. Richard Creatura
                                                            United States Magistrate Judge

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 16